# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DAYLON J. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-02715-NCC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Daylon J. Brown ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17), and Defendant has filed an amended brief in support of the Answer (Doc. 24).[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on September 19, 2014 (Tr. 152-64). Plaintiff was initially denied on January 16, 2015, and he filed a Request for Hearing before an

---

[1] On July 13, 2018, Defendant filed a brief in support of the answer (Doc. 23). Several days later, on July 16, 2018, Defendant filed an amended brief in support of the answer (Doc. 27). Defendant's amended brief in support of the answer was filed within the time permitted to file a brief in support of the answer and an amended brief in support of the answer supersedes Defendant's original brief in support of the answer. Therefore, the Court will only review Defendant's amended brief in support of the answer.

Administrative Law Judge ("ALJ") on February 18, 2015 (Tr. 85-96, 95-99). After a hearing, by decision dated December 27, 2016, the ALJ found Plaintiff not disabled (Tr. 11-28). On October 24, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016 and that Plaintiff has not engaged in substantial gainful activity since May 3, 2014, the alleged onset date (Tr. 16). The ALJ found Plaintiff has the severe impairments of degenerative disc disease and degenerative joint disease, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 17). He can lift and carry 20 pounds occasionally and 10 pounds frequently (*Id.*). He can sit 6 hours and stand and/or walk 6 hours in an 8-hour workday (*Id.*). Bilaterally, he cannot use his feet for foot control operations (*Id.*). He can climb ramps and stairs occasionally, but never ladders, ropes or scaffolds (*Id.*). He can occasionally stoop, kneel, crouch, and crawl, but never balance (*Id.*). He must avoid all exposure to work at unprotected heights, moving mechanical parts, and operating a motor vehicle (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b), 404.1567.

2

there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including photocopy machine operator, router, and marking clerk (Tr. 23-24). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to properly consider RFC because the ALJ did not address Plaintiff's

5

ability to function in the workplace (Doc. 17 at 8).  Second, Plaintiff argues that the ALJ failed to properly consider Plaintiff's credibility (*Id.* at 12).  Third, Plaintiff asserts that the Appeals Council failed to properly consider new evidence (*Id.* at 15).  For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Evaluation of Plaintiff's Subjective Complaints**

First, the Court will address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[3]  *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)).  In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  *See also Halverson v.*

---

[3] As noted by Defendant, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints.  However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

*Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence regarding Plaintiff's physical impairments and found that Plaintiff's degenerative disc disease and degenerative joint disease are severe and that the evidence of record supported the limitations in the RFC, but that Plaintiff failed to meet his burden to prove more restrictive limitations (Tr. 21). In doing so, the ALJ noted that the objective medical findings by the treating physicians did not include significant deficits in "strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait" nor in Plaintiff's "abilities to squat, stand, walk, sit, lift, carry, bend or stoop" (*Id.*). The ALJ also indicated that the objective medical findings do not include reports of long term atrophy or spasm (*Id.*). The ALJ further noted that Plaintiff "was not reported to exhibit significant pain behaviors or signs in the forms of abnormal breathing, uncomfortable movement or elevated blood pressure" (*Id.*). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

The ALJ supported these conclusions regarding the credibility of Plaintiff's subjective complaints in a detailed review of the medical evidence, encompassing nearly four full pages which included relatively normal clinical signs and diagnostic testing. For example, as the ALJ noted, in an emergency department record from Christian Hospital Northeast dated February 11, 2013, while x-rays of Plaintiff's cervical spine showed spondylosis and reversal of lordosis of his cervical spine, they were otherwise negative and showed no cervical canal stenosis, fracture, or spondylolisthesis (Tr. 19, 252). Plaintiff's range of motion was normal and inpatient care was

7

not required (Tr. 19, 254, 330). Plaintiff's treatment from People's Health Centers from February 11, 2014 through September 2, 2016 was similarly unremarkable. As detailed by the ALJ, x-rays of Plaintiff's pelvis and hips showed minor degenerative changes, minimal spurring and mild sclerotic changes of the sacroiliac joints and x-rays of Plaintiff's lumber spine showed disc space narrowing at L4-5 and L5-S1 (Tr. 19, 354, 394-95). Clinical findings included those of limping gait, muscle spasm in his lumbar spine, painful motion and tenderness in his left hip (Tr. 19, 343, 392, 462). However, "[o]bjective medical findings were essentially normal" and, as it relates to Plaintiff's physical impairments, "[t]here was no edema, cyanosis, clubbing, atrophy, . . . [x]-rays of his lumbar spine did not show central canal stenosis [,] . . . and [i]t was recommended that he exercise moderately" (Tr. 20, 343, 387, 410, 449). Indeed, upon the Court's own complete review of the record, the Court notes that many records involve visits unrelated to the Plaintiff's physical impairments during the relevant period. *See, e.g.* Tr. 256-58 (laceration to right hand from knife); 292-310 (lip swelling); Tr. 311-21 (September 2010 emergency room visit); Tr. 340 (flu vaccine). To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Second, the ALJ also found that any treatment for his physical impairments was relatively conservative in nature (Tr. 21). Specifically, the ALJ found that there was not any medical evidence that the Plaintiff was ever "prescribed, or determined to require, the prolonged use of an assistive device such as a cane or brace for the purpose of ambulation" (Tr. 21). *See also* Tr. 46 (testifying that he uses a cane, while not prescribed, off and on for the last year for

8

getting up and sitting down). The ALJ also noted that Plaintiff did not "frequently" report being in acute distress (Tr. 21). Indeed, upon review of the record, as noted by Defendant, Plaintiff was never hospitalized for treatment related to his physical symptoms (*See* Tr. 21-22). Plaintiff also had not sought regular treatment through a work hardening program or a pain clinic (Tr. 21). Plaintiff asserts that he was never referred to a work hardening program and that he was on the referral list for a pain clinic. Indeed, the record reflects that Plaintiff was referred to pain management but had "not heard from referrals" (Tr. 364). Regardless, the absence of this care during the relevant period was still properly noted by that ALJ. An ALJ may properly consider Plaintiff's conservative and limited treatment history in her determination of a plaintiff's credibility. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

The ALJ also found that Plaintiff's conditions were "stable and controlled with medication" (Tr. 22). Indeed, the record reflects that while Plaintiff reported an increase in pain, Plaintiff's condition was largely controlled by his pain medication (Tr. 413 (tramadol and patches help dull the pain some but doesn't completely take the pain away)). Additionally, although Plaintiff had been referred to both an orthopedic surgeon and a pain management clinic, Plaintiff testified that no surgery, test, physical therapies, or injections were currently recommended for him and during the disability period he had not sought care at either (Tr. 45-46,). *Cf. Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (repeated and consistent doctor visits coupled with many diagnostic tests, taking numerous prescription medications and use of many

9

pain treatment modalities supported claimant's subjective complaints of pain). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *See Wildman*, 596 F.3d at 965 (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)).

The ALJ also specifically addressed whether Plaintiff suffered any side effects from his medication, finding the Plaintiff "does not allege any medication side effects" and noting "medical records do not document any physician's findings that the [Plaintiff] has had persistent and adverse side effects due to prescribed medication, resulting in significant limitations of functional capacity that were incapable of being controlled by medication adjustments or changes" (Tr. 22). Plaintiff asserts that this statement is "inaccurate" and directs the Court to a treatment note from January 2, 2015 in which Plaintiff reported that it was difficult to get out of bed since his pain medication was increased (Doc. 17 at 13; Tr. 389). In addition to the record identified by Plaintiff, the Court found two additional instances in which Plaintiff indicated he was having side effects as a result of his medication. First, Plaintiff testified that he stopped regularly taking his Tylenol 3 because he was having severe stomach issues (Tr. 48). Second, Plaintiff reported on an Adult Function Report that he experienced dizziness as a result of his pain medications (Tr. 203). However, during his testimony, Plaintiff denied any side effects to his pain medication in addition to nausea caused by the Tylenol 3 and, other than the record identified by Plaintiff, the medical record is devoid of any other mention of potential side effects to his medication (Tr. 49). *See also* Tr. 222 (self-reporting no side effects to any of his medication). Therefore, the ALJ properly considered any side effects Plaintiff may have to his medication. *Cf. Noah v. Astrue*, No. 2:10CV56LMB, 2011 WL 4435086 at *9 (remanding the ALJ's decision, in part, because the ALJ did not explain how plaintiff's testimony regarding his limitations and the side effects of his medications was inconsistent with the record).

10

Plaintiff suggests that he did not receive medical care because he did not have insurance (Doc. 17 at 13-14). Specifically, Plaintiff states that he was on the waiting list for the pain management clinic pending appropriate referral and approval (*Id.* at 13-14). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, as the ALJ noted, the record does not reflect that Plaintiff sought treatment offered to indigents (Tr. 23). *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents). The ALJ also properly indicated that the record does not reflect that Plaintiff was denied treatment or medication for insufficient funds, or ever discussed alternative methods of payment with his treating physicians (Tr. 23). *See Goff*, 421 F.3d at 793 (finding it significant that the record did not show a claimant was denied treatment or that she was not provided with alternative, less expensive treatments when needed); *Harris*, 356 F.3d at 930; *Johnson*, 866 F.2d at 275 (ALJ properly considered that claimant made no effort to inform her doctors of her financial issues or to take advantage of any available medical assistance programs). Further, as the ALJ highlighted, Plaintiff continued to smoke cigarettes daily despite being advised to quit (Tr. 20, 266, 340-42, 347, 366, 390, 403). *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (an ALJ may consider disability claimant's failure to stop smoking in making his credibility determination).

The ALJ also found that "[t]here are inconsistent reports as to why the claimant did not get the magnetic resonance imaging (MRI) done on his back in 2016" (Tr. 23). Indeed, as noted by the ALJ, Plaintiff reported that he was unable to obtain the MRI because his insurance would

not pay for it but the medical records indicate that he could not obtain the MRI secondary to claustrophobia (Tr. 23, 474, 476). Plaintiff explains that his insurance previously would not pay for an MRI and, therefore, Plaintiff was unaware that he could not tolerate an MRI until 2016 when he attempted to obtain one (Doc. 17 at 14). However, Plaintiff appears to misconstrue the ALJ's analysis of Plaintiff's failure to obtain an MRI. While the ALJ notes the inconsistency, when taken in context, the ALJ's statements regarding Plaintiff's failure to obtain an MRI relate to the ALJ's discussion of Plaintiff's financial ability to seek treatment, as addressed in more detail above, not Plaintiff's inconsistent statements (Tr. 23).

Finally, while the ALJ did not explicitly address Plaintiff's activities of daily living, it is clear from the opinion that the ALJ found Plaintiff's performance of certain tasks to be inconsistent with Plaintiff's reports regarding the intensity, persistence and limiting effects of his symptoms (Tr. 18-19, 23). For example, the ALJ notes that while Plaintiff indicated in his Adult Function report that he was not able to stand or sit for more than five or ten minutes, he also testified that he goes to church every Sunday and the service lasts for approximately two hours (Tr. 18-19, 54, 197, 202). Plaintiff also testified that, with some limitations, he both takes out his mother's trash on occasion and goes to the grocery store (Tr. 43). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding [his] activities of daily living also raised legitimate concerns about [his] credibility.").

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints is based on substantial evidence and is consistent with Regulations and case law.

**C. RFC**

Next, Plaintiff asserts that the ALJ failed to properly consider RFC because the ALJ did not address Plaintiff's ability to function in the workplace (Doc. 17 at 8). Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh*, 222 F.3d at 451). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016

13

(8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found Plaintiff has the RFC to perform a light work with the following limitations (Tr. 17). He can lift and carry 20 pounds occasionally and 10 pounds frequently (*Id.*). He can sit 6 hours and stand and/or walk 6 hours in an 8-hour workday (*Id.*). Bilaterally, he cannot use his feet for foot control operations (*Id.*). He can climb ramps and stairs occasionally, but never ladders, ropes or scaffolds (*Id.*). He can occasionally stoop, kneel, crouch, and crawl, but never balance (*Id.*). He must avoid all exposure to work at unprotected heights, moving mechanical parts, and operating a motor vehicle (*Id.*).

The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed the consistency of Plaintiff's subjective complaints and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record and his activities of daily living. The ALJ additionally properly addressed the limited opinion evidence of record.[4]

First, the ALJ considered the opinion of Dr. Arjun Bhettacharya, M.D. ("Dr. Bhettacharya"), a consultative examiner (Tr. 20, 372-79). Although the ALJ did not assign a specific weight to the opinion of Dr. Bhettacharya, the ALJ conducted a detailed analysis of the consultative examiner's report and highlighted several of Dr. Bhettacharya's findings. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (an ALJ need not weigh the medical opinions of record unless the opinions are inconsistent). Specifically, the ALJ noted that Plaintiff "needed

---

[4] The ALJ addressed the opinion evidence and other detailed reports as it relates both to Plaintiff's mental health impairments as well as his physical impairments. Plaintiff only raises issues as it relates to his physical impairments, therefore the Court will not address the medical opinion evidence as it relates to Plaintiff's mental health impairments.

14

assistance to get on and off the examination table" and Plaintiff "was not able to toe-heel walk because of back pain" (Tr. 20, 374). However, as indicated by the ALJ, Dr. Bhettacharya reported that Plaintiff's gait was normal, he did not use an assistive device when walking around the room, and he had full range of movement in his shoulders with no atrophy noted in his arms (Tr. 20, 274). Indeed, upon review of the report, the findings by Dr. Bhettacharya were fairly unremarkable on the whole; Dr. Bhettacharya concluded with his clinical impression that Plaintiff suffers from "lumbosacral discomfort with decreased range of movement especially in the left leg, but with no specific neurological deficit identified" (Tr. 374). The ALJ did not err in her analysis of Dr. Bhettacharya's opinion. Further, even if this Court were to accept that Dr. Bhettacharya's report was not properly classified as a medical opinion, contrary to Plaintiff's apparent assertion that a medical opinion is required for the ALJ to formulate Plaintiff's RFC, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Second, the ALJ also properly considered the Third Party Adult Function Report dated October 7, 2014, submitted by Plaintiff's mother (Tr. 18, 189-95). Opinion evidence from a claimant's parent "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (quoting SSR 06–03p (rescinded)). However, as noted by the ALJ, the Third Party Adult Function Report completed by Plaintiff's mother is fairly similar to Plaintiff's own report, and as such, the ALJ found the report to be not credible for the same reasons. *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir.2006) (an ALJ may discount corroborating testimony on the same basis used to discredit a claimant's testimony).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints; that the ALJ's RFC determination is based on substantial evidence; and that Plaintiff's arguments to the contrary are without merit.

**C. New Evidence**

Finally, Plaintiff asserts that the Appeals Council failed to properly consider new evidence (Doc. 17 at 15). After a decision was issued by the ALJ, counsel submitted medical records from Ravindra Shitut, MD ("Dr. Shitut"), at CH Orthopedic and Spine Surgeons, dated March 10, 2017 through May 23, 2017 including an MRI (*Id.* at 15).[5] In its denial, the Appeals Council acknowledged receipt of these documents, but determined that the additional evidence "does not relate to the period at issue" (Tr. 2). In so doing, the Appeals Council noted that records were dated March 10, 2017 through May 23, 2017, the ALJ decided Plaintiff's case through December 30, 2016, and that the evidence "does not affect the decision about whether you were disabled beginning on or before December 30, 2016" (*Id.*). The Appeals Council did not otherwise address the contents of these medical records nor were the records included on the Appeals Council's exhibits list (*See* Tr. 1-5). The records have not been included in the administrative transcript. To the extent Plaintiff asserts that supplementation of the record is necessary for the Court's review, the Court finds it unwarranted where, as is the case here, the Appeals Council did not consider the additional evidence and found it unrelated to the relevant period. *See cf. Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2012) (Any newly submitted evidence that relates to period before date of ALJ decision becomes part of administrative record before Appeals Council, even though evidence was not originally included in ALJ's record).

---

[5] The exact date of the MRI has not been identified by the parties.

The Appeals Council must consider additional evidence that is "new, material, and related to the period on or before the date of the ALJ's decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b). In this case, the Appeals Council acknowledged receipt of the additional evidence, but did not consider it because it post-dated the ALJ decision and did not "relate to the period at issue" (Tr. 2). The Appeals Council is not obligated to consider additional evidence that post-dates the ALJ decision unless "it relates to the claimant's condition on or before the ALJ's decision." *Cunningham*, 222 F.3d at 502.

Plaintiff asserts that the MRI relates to the period prior to the hearing decision because Plaintiff was scheduled for this MRI twice before the hearing decision and Plaintiff was finally able to obtain the MRI shortly after the hearing decision (Doc. 17 at 16). Indeed, Dr. Shitut initially referred Plaintiff for an MRI in June of 2016 and Plaintiff was unable to obtain MRIs on August 31, 2016 and October 4, 2016 due to claustrophobia (Tr. 474-77). Plaintiff fails to explain, however, the significant gap in time between the previously scheduled MRIs and the one occurring on a date between March 10, 2017 and May 23, 2017. Moreover, merely because an MRI was scheduled prior to the hearing decision but was ultimately completed after the hearing decision does not mean that it relates back to the relevant period. *See Zorumski v. Barnhart*, No. 4:01CV616CEJ, 2002 WL 31452406, at *5 (E.D. Mo. Sept. 4, 2002) (remanding an action in part because the Court cannot determine the onset date of the impairments indicated in an MRI). *See also Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (records from hospitalization approximately 17 months after the ALJ's decision not probative of claimant's condition during the relevant time period). Regardless, Plaintiff has not made any attempt to demonstrate that there is a reasonable probability that this additional evidence would change the outcome of the

ALJ's decision. *Woolf v. Shalala,* 3 F.3d 1210, 1215 (8th Cir. 1993) ("To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination."). Therefore, the Court finds that the Appeals Council properly addressed the new evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Supplement the Transcript (Doc. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 21st day of March, 2019.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE